# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 15, 2011

## STATE OF TENNESSEE v. TOMMY L. BEATY
## a/k/a JACKY WAYNE BEATY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3266    Mark J. Fishburn, Judge**

---

**No. M2010-01492-CCA-R3-CD - Filed April 8, 2011**

---

The Defendant, Tommy L. Beaty, pled guilty to aggravated burglary and agreed to allow the trial court to set the length and manner of his sentence. The trial court sentenced him to thirteen years in the Tennessee Department of Correction. On appeal, the Defendant contends the trial court erred when it set the length of his sentence and when it ordered him to serve his sentence in confinement. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, J.J., joined.

Chase T. Smith (at trial) and Jeffrey A. DeVasher (on appeal), Nashville, Tennessee, for the Appellant, Tommy L. Beaty.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General, and Joel W. Crim, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises from the Defendant's nighttime burglary of a Davidson County residence. At the Defendant's plea submission hearing, the State set forth the following facts in support of his guilty plea:

[O]n August the 1st of 2009, the victim, Janet Major, was woken up [at]

approximately 2 [o'clock] in the morning when she heard the garage door open. She was staying at 809 Fairoaks Drive, here in Davidson County, which is a residential neighborhood. When she heard the garage door open, which was strange, she looked out and saw an individual dressed in jeans and a hoodie that was leaving her residence. . . . [H]er daughter, as well as a friend that was spending the night, [were in the home], so she immediately called the police. The police responded to the scene and noticed that entry was made into the house through a basement window that was broken out. Entry was then made into a vehicle. The offender took a garage door opener out of the vehicle and then opened the garage door, [the garage door opener] was abandoned at the scene.

The officer that responded at the scene, had a K-9 that followed the footsteps, which were actually in the dew, then released the dog and it caught up to [the Defendant]. [The Defendant] had a lot of change that was taken out of the vehicles and was then apprehended at the scene.

Based upon the Defendant's conduct, a Davidson County grand jury indicted the Defendant for aggravated burglary, theft of property, evading arrest, and two counts of theft of a motor vehicle. The Defendant pled guilty to one count of aggravated burglary, and the State dismissed the remaining counts of the indictment. He agreed to be sentenced as a Range III, Persistent Offender, with the trial court to determine the length and manner of service of his sentence.

At the Defendant's sentencing hearing, the following evidence was presented: The State introduced a presentence report, which indicated that the Defendant dropped out of high school at age thirteen and had yet to complete a G.E.D., though he had earned credits toward such a degree equivalency during previous terms of incarceration. The Defendant reported working at a car detailing service in Texas until he was fired after three years of employment. The Defendant also reported working at another Texas company, Grand Prairie, doing "home repair" for three years until he was fired in 1997. He reported doing "odd jobs" on the property of Porter Neal in Nashville since 2009. The presentence report included a letter from Porter Neal confirming he would continue to employ the Defendant in the event the Defendant was granted alternative release. The Defendant stated that he had been a musician since age eight and occasionally performed publicly to pay "essential bills."

The Defendant, who was forty-two at the time the presentence report was prepared, had a history of alcohol abuse. He began drinking alcohol at age fourteen, and he estimated that he consumed a twelve-pack of beer per week until he quit drinking in August 2009 due to "being incarcerated and working to change my life." He reported having committed

2

crimes while intoxicated and stated his alcohol abuse caused him to lose friends and family members and to "push others away." Since his arrest in this case, the Defendant had completed the first twelve weeks, and started the second twelve weeks, of a program entitled "Christians Against Substance Abuse" at the Hill Detention Center. He had also completed one anger management course and had started another. He was also a member of a chapter of Alcoholics Anonymous that met at the Detention Center.

The Defendant's criminal record included convictions in both Tennessee and Texas. In 2007 in Tennessee, the Defendant was convicted of disorderly conduct, public intoxication, and resisting a stop, frisk, and halt arrest. Because the Defendant and his brother, Jacky Beaty, have used each other's names as aliases during multiple arrests in Texas, his Texas criminal record is unclear. According to the presentence report, a search of the National Criminal History Database revealed several convictions under the Defendant's name that the investigator preparing the report was unable to verify belonged to the Defendant. The investigator, collaborating with Texas authorities, verified that the Defendant had the following Texas convictions: burglary of a habitation, criminal trespass, providing false information to police, theft under $750, and two convictions for simple burglary. The Defendant received probation with only minimal jail time for all of his convictions except the conviction for burglary of a habitation, which, having occurred in 2003, was his most recent Texas conviction and for which he received a five-year sentence of confinement. The presentence report also indicates that, at the time the Defendant committed the present offense, he was on parole in Texas.

The presentence report included a victim impact statement from Janet Major in which she reported that the Defendant's actions most affected the children who were at her home during the burglary. She expressed shock that the Defendant broke into her home when three vehicles were parked outside, which indicated that people were present in the home. She reported feeling "concern for the safety of [her] family" and reported implementing increased security precautions at her home. A letter from Mrs. Major was also introduced at sentencing. In her letter, Mrs. Major expressed shock at the Defendant's boldness, stating her fear that the Defendant's actions would only "intensify with time." She urged the trial court to do "all [it] could to get him off the streets for as long as possible."

A copy of a letter written by the Defendant to Texas authorities was introduced at trial. In the letter, the Defendant stated that his name was "Jacky Wayne Beaty" and that he was currently incarcerated in Nashville, Tennessee, under the name of his brother, "Tommy Wayne Beaty." He stated that he had "a fugitive warrant out of [Texas] for a parole violation" and requested Texas officials to extradite him to Texas in order to stand trial for his Texas warrant.

Officer Joe Williams of the Metropolitan Nashville Police Department testified that he was the first officer to respond to the victim's report of the burglary in this case. He confirmed that a police K-9 assisted him in tracking and apprehending the Defendant. Officer Williams testified that, upon arrest, the Defendant was in possession of a Rolex watch, two one-dollar bills, and coinage.

On cross-examination, the officer testified that the Rolex watch did not belong to the victims in this case. The officer also testified that the Defendant did not enter the living space of the victim's home, stating that the home bore no signs of forced entry.

The Defendant testified at his sentencing hearing, identifying himself as "Jeffrey Wayne Beaty" and stating that "Tommy L. Beaty" was his brother. The Defendant confirmed the accuracy of the presentence report's list of his prior convictions, with the exception of the theft under $750 conviction.

The Defendant explained the events that occurred immediately before he burglarized the victims' home: Having heard that the alternative rock band Green Day was playing at the Sommet Center in Nashville, the Defendant pawned his Fender guitar in order to attend the concert. At the concert, the Defendant became extremely inebriated and afterwards wandered around asking strangers for a ride to Madison. Someone agreed to give him a ride but dropped him off in "some area" that the Defendant was not familiar with. He recalled his next decision to break into the victims' garage:

> [A]ll I was thinking was I needed another drink, and I reached in my pocket and I didn't have no change or nothing, so like an idiot I went and, you know, and walked through this yard and I went up to the car and I went to open the door, but the light came on, so I just left it alone, and I walked down the driveway, and when I walked by the house, I seen a vehicle sitting in the garage and I climbed through the door window, and I went up to the vehicle and I took the change out and then I took the remote off the sun visor and I opened the door and I walked out.

He denied ever entering the victims' residence.

The Defendant testified that alcohol had been a factor in "just about every one" of his prior convictions. He acknowledged having used his brother's name in the past when arrested for public intoxication in Texas. The Defendant read the following letter in which he described his remorse and his resolve to change his behavior:

> [O]n behalf of my actions, I'd like to apologize to Mr. and Mrs. Don and Janet

4

Major[] for what happened. My heart goes out to each of you. I'm sorry. I've admitted to going inside of your garage. Also, I apologize to everyone else that was present, the fine job the Nashville police did with the K-9 unit, I did survive with only K-9 bites; I'm thankful the victims did not shoot me, as well as the police.

Also apologize to my mother for causing pain to her and the family. My mind is clear and free of alcohol. Drinking is no longer a part of my life. I took my eyes off God and this is the result when you do things like that. I've taken advantage of AA, life skills, anger-management, New Life, [C]hristian-based classes as well. I've rededicated my life to God. I'm prepared to get a sponsor, if I do have [to] have a job and a home to go to if I'm considered to do so.

Have support of my family and friends. I will abide by the law to be a role model in the community and attend church weekly and be involved. When you see me, I'll be a positive, productive citizen as I was raised to be. Thank you kindly again, as a brother in Christ, I love each of you. Thank you. God bless you.

Jarrow McClain, an employee of the Salvation Army rehabilitation program in Nashville, testified that he completed the Salvation Army program six years before the sentencing hearing and that the program had helped him "tremendously" and kept him "from doing the crazy things that [he] used to love to do." He testified that the Christian-based program provided educational courses, computer training, and drug and alcohol abuse programs. He testified that, were the Defendant to enroll in the program, he would have twenty-four hour access to a counselor. At the conclusion of the sentencing hearing, the trial court sentenced the Defendant to thirteen-years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

### A. Length of Sentence

The Defendant contends the trial court failed to recognize his remorse as well as his cooperation by pleading guilty as mitigating factors. He argues that, given this error, this Court should review the Defendant's sentence de novo and re-sentence him to ten years, the statutory minimum for his range and conviction. The State does not respond to whether the trial court should have recognized the Defendant's remorse and cooperation as mitigating factors, instead it argues that the applicable enhancement factors adequately support the

5

Defendant's thirteen-year sentence.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. (2006). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, Tennessee Code Annotated section 40-35-103 (2006), the appellate court may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 4-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2006).

Specific to the review of the trial court's application of enhancement and mitigating factors, "the 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The Tennessee Supreme Court continued, "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346. The trial court shall also consider, but is not bound by, the guideline that the minimum sentence within the range should be imposed, but the sentence length, within the range, should be adjusted based on the presence or

absence of mitigating and enhancement factors. T.C.A. § 40-35-210(c)(1) and (2) (2006).

Tennessee Code Annotated section 40-35-113 contains a non-exclusive list of mitigating factors that a trial court may apply to a defendant's sentence "if appropriate for the offense." T.C.A. § 40-35-113(2006). The list contains the following two mitigating factors relevant to this appeal:

> (1) The defendant's criminal conduct neither caused nor threatened serious bodily injury;
>
> . . . .
>
> (13) Any other factor consistent with the purposes of this chapter.

T.C.A. § 40-35-113(1) and (13). The burden of proving applicable mitigating factors rests upon the defendant. *State v. Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App., at Knoxville, Sept. 18, 1995), *perm. app. denied* (Tenn. 1996).

The Defendant is a Range III, Persistent Offender, convicted of a Class C felony. *See* T.C.A. § 39-14-403(b) (2009). As such, his applicable sentencing range was ten to fifteen years. *See* T.C.A. § 40-35-112(b)(3) (2009).

In this case, at the close of the sentencing hearing, the trial court applied the following two enhancement factors to the Defendant's conviction:

> (1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
>
> . . . .
>
> (13) At the time the felony was committed, [the Defendant was on probation]
> . . . .

T.C.A. § 40-35-114 (1) and (13) (2009). The trial court applied mitigating factor (1), that the Defendant's conduct neither caused nor threatened serious bodily injury. The trial court also discussed the Defendant's efforts at rehabilitation, including his enrollment in various treatment programs since being incarcerated. The trial court, however, expressed doubt as to the Defendant's actual potential for rehabilitation, given his past recurrent alcohol abuse, despite participation in alcohol abuse programs in Texas.

Considering "the honesty and candor of the [D]efendant as demonstrated at the sentencing hearing," the trial court found that the Defendant was honest about his conduct

in this case and was "sorry for what he did." The trial court, however, noted that it had a "hard time reconciling" this remorse with the Defendant's attempts to negotiate with Texas authorities for a reduced sentence on his pending charges in Texas.

We conclude that the record does not support the Defendant's claim that the trial court failed to take into account his remorse as a mitigating factor in his case. The trial court gave adequate attention to his candor and honesty, noting that other aspects of the Defendant's case, such as his communications with Texas officials, decreased the weight it would afford this factor in sentencing.

As to the Defendant's claim that the trial court failed to consider as a mitigating factor his cooperation by pleading guilty, we acknowledge that such a factor is a proper consideration under the "catch-all" provision of mitigating factor (13). *See State v. Jeffrey Brian Parks*, No. M2003-02002-CCA-R3-CD, 2004 WL 1936404, *5 (Tenn.Crim.App., at Nashville, Aug. 30, 2004), *no Tenn. R. App. P. 11 application filed*. The record bears no mention of this consideration as a mitigating factor in the Defendant's case. While such a consideration would have been valid, we decline to reverse the presumption of correctness of the trial court's sentence solely on this basis.

In summary, the Defendant's thirteen-year sentence was within the applicable range for the Defendant. Because the trial court based the sentence on a thorough consideration of the applicable enhancement and mitigating factors, it sentenced the Defendant in a manner consistent with the purposes and principles of the Sentencing Act. *Carter*, 254 S.W.3d at 346. As such, we will not disturb his sentence on appeal. The Defendant is not entitled to relief on this issue.

### B. Alternative Sentencing

The Defendant next contends that the trial court erred in denying him a sentence of alternative release into the community. He argues first that, should this Court reduce his sentence to ten years, which would make him eligible for probation, it should allow him to serve his sentence on probation because the record does not establish that "the denial of an alternative sentence in this case would have a deterrent effect upon others within the jurisdiction beyond the normal deterrence inherent in any criminal offense." He argues second that the trial court erred in denying a sentence of "special needs" Community Corrections, for which he was eligible under his current thirteen-year sentence.

The State responds first that, because the Defendant's thirteen-year sentence was proper, he is not eligible for probation. It argues that, even were ten years a more appropriate sentence, the principles of sentencing would not support an alternative release sentence. The

State also contends that, though the Defendant was eligible for Community Corrections, this Court cannot reverse the trial court's denial of Community Corrections because the trial court followed proper sentencing procedure in sentencing the Defendant to confinement.

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). An offender is eligible for probation if he is sentenced to ten years or less and has not been convicted of a one of several offenses for which probation is prohibited. T.C.A. § 40-35-303(A) (2006). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2006), Sentencing Comm'n Cmts.

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them. T.C.A. § 40-35-102(6) (emphasis added).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2006). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v.*

*Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

The Tennessee Community Corrections Act was developed to "punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1). The program is available for

> (1) [p]ersons who, without this option, would be incarcerated in a correctional institution;
>
> (2) [p]ersons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person . . . ;
>
> (3) [p]ersons who are convicted of nonviolent felony offenses;
>
> (4) [p]ersons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) [p]ersons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
>
> (6) [p]ersons who do not demonstrate a pattern of committing violent offenses . . . .

T.C.A. § 40-36-106(a)(1)-(6). Those who are sentenced to incarceration or are on escape at the time of sentencing are not eligible for the program. T.C.A. § 40-36-106(6).

Felony offenders who are not otherwise eligible for the program "and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution," may be considered for punishment in the community under the "special needs" provisions of the Community Corrections Act. T.C.A. § 40-36-106(c). In order to be sentenced pursuant to the "special needs" exception, however, the offender must first demonstrate that he or she is eligible for probation. *Grigsby*, 957 S.W.2d at 546. The appellant bears the burden of demonstrating a "special need." *Id*. at 547 n.11.

As discussed above, the trial court properly sentenced the Defendant in this case to

thirteen years. Thus, the Defendant is not eligible for probation. *See* T.C.A. § 40-35-303(A). Further, because eligibility for probation is a prerequisite for sentencing under the "special needs" provision of the Community Corrections Act, the Defendant is likewise ineligible for "special needs" sentencing. As such, we conclude the trial court properly rejected all forms of alternative release when sentencing the Defendant. He is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude that the trial court properly sentenced the Defendant to thirteen years in the Tennessee Department of Correction. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

11